IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:13-CT-3273-FL

| | |
|---|---|
| GARRY SANDERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| SHERIFF DONNIE HARRISON, ) | |
| WAKE COUNTY SHERIFF'S ) | |
| DEPARTMENT, and the WAKE ) | |
| COUNTY DETENTION CENTER, ) | |
| ) | |
| Defendants. ) | |

This matter comes before the court on defendants' motion for summary judgment (DE 20). The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court grants defendants' motion.

**STATEMENT OF THE CASE**

On October 31, 2013, plaintiff, a former state inmate, filed this civil rights action *pro se* pursuant to 42 U.S.C. § 1983, against defendants Sheriff Donnie Harrison ("Harrison"), the Wake County Sheriff's Department, and the Wake County Detention Center (the "detention center"). Plaintiff alleged that defendants interfered with his legal mail and denied him access to courts in violation of the First Amendment to the United States Constitution. Plaintiff also alleges that defendants violated his constitutional rights because they held him past the expiration of his sentence.

Defendants subsequently filed a motion for summary judgment, arguing that plaintiff is unable to establish a constitutional violation. Alternatively, each of the defendants asserted the affirmative defense of qualified immunity. The motion was fully briefed.

**STATEMENT OF FACTS**

Except where otherwise noted below, the undisputed facts are as follows. In 2011, plaintiff filed a civil lawsuit in North Carolina State Court against his former court appointed attorney Sonya Allen alleging legal malpractice. (Compl. Attach. p.1.) The state court ultimately dismissed plaintiff's legal malpractice action. (Id.)

Plaintiff decided to appeal the state court's dismissal of his legal malpractice action, but needed an extension of time to complete his appellate brief. (Id.) Plaintiff prepared a motion for an extension of time to file an appeal, and personally delivered a copy of his motion to attorney Sonya Allen's office. (Id.) As a result of this conduct, plaintiff was charged with stalking/harassing his former attorney, Sonya Allen, and was incarcerated at the detention center. (Id.) Plaintiff's motion for an extension of time to file an appeal was denied. See (id.)

While plaintiff was incarcerated at the detention center, he "asked a friend [] to go to the Court of Appeals to pick up the Rules of Civil Procedure and the denial of the extension of time so that [plaintiff] could prove his innocence on court-day." (Id.) (internal quotations omitted). Plaintiff's friend then brought the requested materials to the detention center, but detention center staff would not permit plaintiff's friend to drop off the materials at the detention center. Plaintiff states that detention center staff, instead, instructed plaintiff's friend that an attorney needed to provide plaintiff with the requested materials. (Id.) Plaintiff was not represented by an attorney. (Id.)

2

Defendants state that plaintiff is correct in that detention center policy provides that the public may mail letters, photographs, forms, and other items for inmates through the United States Postal Service, but does not permit such items to be dropped off in person for inmates.[1] (Steinbeck Aff.[2] ¶ 4.) Defendants, however, dispute plaintiff's contention that detention center policy requires that mail to inmates be sent by an attorney. (Id.) Rather, defendants state that detention center policy permits all inmates to receive regular and legal mail. (Id.)

At some point, plaintiff was convicted of the stalking/harassment charge and, on December 19, 2011, was sentenced to a term of 150 days incarceration, with 90 days being suspended. (Id. ¶ 6 and Ex. 1.) Plaintiff, additionally, was placed on a 12 month period of supervised probation, and he received credit on his sentence for 40 days of pretrial confinement. (Id.) As a result, plaintiff was required to serve an active sentence of 20 days beginning on December 19, 2011. (Id.) Plaintiff served his sentence, and was released on January 7, 2012. (Id.)

## DISCUSSION

A.     Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the

---

[1] The only exception to the policy at issue is for clothing that an inmate may need to wear for a court appearance or any prescription medication. (Steinbeck Aff. ¶ 4.)

[2] Heidi Steinbeck ("Steinbeck") submitted an affidavit in support of defendants' motion for summary judgment. Steinbeck is employed as an administrative officer at the detention center. (Steinbeck Aff. ¶ 2.) Steinbeck is responsible for administering jail programs and keeping records. (Id.)

3

nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

B. Analysis

Defendants assert the defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009). The court first determines whether defendants violated plaintiff's constitutional rights.

1. First Amendment Challenge to Policy

The court begins with plaintiff's challenge to the detention center's policy prohibiting persons from personally delivering letters, photographs, forms, and other items to inmates at the detention center. Prisoners have a First Amendment right of free speech and to send and receive mail. Hudson v. Palmer, 468 U.S. 517, 547 (1984). However, prison officials may adopt regulations that impinge on an inmate's constitutional rights if those regulations are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987); Jones v. North Carolina Prisoners' Union, 433 U.S. 119, 125 (1977) ("The fact of confinement and the needs of the penal

4

institution impose limitations on constitutional rights, including those derived from the First Amendment.")

In evaluating a prisoner's claim that a prison policy violates his First Amendment rights, the court must evaluate four factors to determine whether the policy is reasonably related to a legitimate penological interest. See Turner, 482 U.S. at 89.

> First, is there a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it"? Second, are there "alternative means of exercising the right that remain open to prison inmates"? Third, what "impact" will "accommodation of the asserted constitutional right . . . have on guards and other inmates, and on the allocation of prison resources generally"? And, fourth, are "ready alternatives" for furthering the governmental interest available?

Beard v. Banks, 548 U.S. 521, 529 (2006) (internal citations omitted; quoting Turner, 482 U.S. at 89); see Morrison v. Garraghty, 239 F.3d 648, 655 (4th Cir. 2001); see also, Ryidu-x v. Wolfe, Civil Action No. WDQ-11-358, 2011 WL 5122633, at *4 (D. Md. Oct. 25, 2011) ("The test to determine if the restrictions are justified requires examination of whether there is a rational relation between the asserted governmental interest and the regulation in question. In addition, this Court must examine whether there are alternative means of exercising the right asserted, whether accommodation of the right will impact on the orderly operations of the prison, and whether readily available alternatives to the regulation would be less restrictive.").

Defendants contend that the first Turner factor is satisfied because there is a valid connection between the prison regulation and the legitimate government interest as the policy at issue furthers institutional security interests. The detention center has a legitimate penological interest in preserving prison security and maintaining order and discipline. See Thornburgh v. Abbott, 490 U.S. 401, 423 (1989). Further, in light of the difficult and delicate problems of prison management,

5

the United States Supreme Court has "afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world." Id. at 408; see also Altizer v. Deeds, 191 F.3d 540, 547 (4th Cir. 1999) (holding that a prison rule that impinges on an inmate's constitutional rights is valid if reasonably related to legitimate penological interests). Thus, the first Turner factor weighs in favor of finding that the detention center's policy is reasonably related to a legitimate penological interest.

As for the second and fourth prongs of the Turner test, the court considers whether there are alternative means for inmates to exercise their constitutional rights or an absence of ready alternatives. Here, plaintiff had alternative means of exercising his First Amendment rights in that detention center policy permitted him to mail the materials at issue to the detention center. As a result, at most, the policy at issue could be inconvenient and cause some delay and expense. However, such minor difficulties do not qualify as impediments of constitutional significance. See Jehovah v. Clarke, No. 7:14cv00538, 2015 WL 2195059, at *6 (W.D. Va. May 11, 2015). Thus, the second and fourth factors of the Turner test weigh in favor of finding that the detention center's policy is reasonably related to a legitimate penological interest.

The third Turner factor–what impact the accommodated constitutional right would have on guards, other inmates, and the allocation of prison resources–is related to the security risk concerns associated with the first Turner factor. Specifically, permitting individuals to deliver mail or other personal items directly to the detention center poses greater security risks to the detention center's intake staff and the institution as a whole. An institutional policy establishing one point of entry and screening process for such materials conserves institutional resources and promotes institutional security. Thus, the third factor weighs in favor of finding that the detention center's policy is

6

reasonably related to a legitimate penological interest. Based upon the foregoing, the court finds that the detention center policy prohibiting individuals from delivering letters, photographs, forms, and other items for inmates directly to the detention center, and requiring them instead to mail such materials, is reasonably related to a legitimate penological interest.

To the extent plaintiff alleges that detention center staff interfered with his legal mail by refusing to accept the personal delivery of the items at issue or by refusing to accept the materials through the mail, such claim fails. At most, plaintiff's allegation amounts to nothing more than an isolated incident of mail mishandling. Isolated incidents of mail mishandling do not rise to the level of a constitutional violation. See Buie v. Jones, 717 F.2d 925, 926 (4th Cir.1983) (finding isolated incidents of opening of legal mail do not state a cognizable § 1983 claim); Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) (noting that "an isolated incident of mail tampering is usually insufficient to establish a constitutional violation.").

Further, plaintiff has provided no evidence or even any specific factual allegations in support for this claim. Rather, plaintiff merely states that detention center staff refused to accept the materials at issue through the mail because they were not sent by an attorney. Plaintiff does not state who attempted to send the materials, the date the materials were sent, the date the materials were rejected, or any evidence that the materials in fact were rejected. Thus, plaintiff fails to establish a constitutional violation. See White v. White, 886 F.2d 721, 723 (4th Cir. 1989) (finding that there is a minimum level of factual support required to state a constitutional claim). Because plaintiff's allegations do not arise to a First Amendment violation, defendants are entitled to qualified immunity for this claim.

## 2. First Amendment Access to Courts

The court next determines whether detention center staff violated plaintiff's First Amendment right to access to courts. In order to state a claim for denial of access to the courts, the inmate must show actual injury or that a defendant's conduct hindered his efforts to pursue a legal claim. See, e.g., Lewis v. Casey, 518 U.S. 343, 351–52 (1996); Michau v. Charleston County, 434 F.3d 725, 728 (4th Cir. 2006). The United States Supreme Court held in Lewis that inmates must be provided "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." Lewis, 518 U.S. at 351 (quotation omitted). The right to access the courts extends to direct criminal appeals, habeas corpus proceedings, and civil rights actions challenging conditions of confinement. Id. at 354-55. The actual injury requirement mandates that an inmate "demonstrate that a nonfrivolous legal claim had been frustrated or impeded." Id. at 353. The Court did not extend the holding to include the right to "litigate effectively once in court." Id. at 354 (disclaiming language in Bounds v. Smith, 430 U.S. 817, 825 (1977), suggesting otherwise).

In this case, plaintiff makes the conclusory assertion that his inability to obtain the North Carolina Court of Appeals' Rules of Appellate Procedure or the North Carolina Court of Appeals' denial of his motion for an extension of time resulted in the Wake County Superior Court's determination that he was guilty of stalking. Plaintiff, however, has provided no evidence or facts to support this contention. Even if plaintiff could have introduced the above-stated evidence at his trial for the stalking charge, such evidence does not negate the fact that plaintiff visited the office of attorney Sonya Allen or establish that plaintiff had the right to be at his former attorney's office, particularly where plaintiff could have served his motion through the mail. As a result, there is no

8

indication that any nonfrivolous legal claim had been frustrated or impeded. See White, 886 F.2d at 723. Thus, plaintiff has not demonstrated that detention center staff interfered with his access to courts. Because plaintiff's allegations do not arise to a First Amendment violation, defendants are entitled to qualified immunity for this claim.

      3.      Challenge to Length of Incarceration

Finally, the court considers plaintiff's claim that he was held at the detention center past the expiration of his sentence. The record reflects that, on December 19, 2011, plaintiff was sentenced to a term of 150 days imprisonment, with 90 days of plaintiff's sentence being suspended. (Steinbeck Aff. ¶ 6 and Ex. 1.) Plaintiff, additionally, received a credit to his sentence for 40 days of pretrial confinement. (Id.) As a result, plaintiff had an active sentence of 20 days. See (id.) Plaintiff began serving his 20 day sentence on December 19, 2011, and was released 20 days later on January 7, 2012. (Id.) Plaintiff has not presented any evidence that he was held past his January 7, 2012, release date. Thus, because plaintiff was incarcerated at the detention center for only the time period that was ordered by his sentencing court. Because plaintiff's allegations do not arise to a constitutional violation, defendants are entitled to qualified immunity for this claim.

## CONCLUSION

Based upon the foregoing, defendants' motion for summary judgment (DE 20) is GRANTED. The clerk of court is DIRECTED to close this case.

SO ORDERED, this the 21st day of July, 2015.

*/s/ Louise W. Flanagan*

LOUISE W. FLANAGAN
United States District Judge

9